IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GREG PORTER, *et al.*, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:09-CV-0148-N |
| GUADALUPE VALDEZ, *et al.*, | § § § | |
| Defendants. | § | |

## ORDER

This Order addresses Defendants Guadalupe Valdez and Jesse Flores's motion for judgment on the pleadings [14]. Plaintiffs brought three claims against Defendants in both their individual and official capacities pursuant to 42 U.S.C. § 1983: First Amendment retaliation, due process, and equal protection. The Court grants the motion for judgment in favor of Defendants with respect to Plaintiff Scott Evans's First Amendment retaliation claim because it is barred by qualified immunity and because he fails to state a claim upon which relief may be granted. The Court denies the balance of the motion.

### I. Origins of Defendants' Motion

This is a civil rights case brought by four Dallas County sheriff deputies: Greg Porter, Michael Ramirez, Steven Jones, and Scott Evans. They contend that their bosses, Sheriff Guadalupe Valdez and Executive Chief Deputy Jesse Flores, reassigned them to less desirable posts and shifts in retribution for their campaigning against incumbent Sheriff Valdez.

In 2008, Republican Lowell Cannaday ran for sheriff, challenging incumbent Sheriff Valdez. All four Plaintiff deputies campaigned publicly and actively for Cannaday and against incumbent Valdez. The deputies publicly endorsed Cannaday at a press conference. Three of the deputies were leaders in two different labor groups that endorsed Cannaday. Two of the deputies worked at polling places on behalf of Cannaday, and one even made a public appearance with him.

Sheriff Valdez won the race. Soon after the election, Executive Chief Deputy Flores announced that Plaintiffs would be transferred to new posts and shifts within the Department. Valdez and Flores transferred Deputy Porter from his post as the department's gun-range master to an evening shift doing intake at the county jail. They transferred Deputy Ramirez from his post as a motorcycle officer in Sunnyvale to a post at the information desk in the county jail. They transferred Deputy Jones from his post as patrol-section lieutenant on the day shift to the night shift doing intake at the county jail. Finally, Defendants assigned Deputy Evans, one of the department's two K-9 handlers, to "a newly created midnight shift despite the fact that he had more seniority than any other K-9 qualified deputy." *Id.* at 5.

The disputed facts in this case involve Defendants' motive for the transfers. Plaintiffs allege that Defendants transferred them in retaliation for supporting Cannaday in the election. Defendants argue that there was a legitimate reason for the transfers: to maximize "training and experience for all . . . employees." *Id.* at 7. But Plaintiffs allege that the transfers, rather than being routine, were "unprecedented" in the Department, which they say operates on a seniority system. *Id.* at 6. They say the posts and shifts to which they were assigned were

"normally set aside for those with less experience," *id.* at 7, not for people with decades of experience like Plaintiffs. Porter, Ramirez, and Jones had all served twenty-five years or more at the time of their transfers, while Evans had sixteen years of service.

Plaintiffs sued Defendants, in their individual and official capacities, for First Amendment retaliation, denial of due process, and equal protection violation. Defendants now move for judgment on the pleadings. They argue that qualified immunity bars all of Plaintiffs' claims against them in their individual capacities. They further argue that the Court must dismiss both individual- and official-capacity claims against them because Plaintiffs generally fail state a claim upon which relief may be granted.

## II. LEGAL STANDARD FOR MOTION FOR JUDGMENT ON THE PLEADINGS

"A motion brought pursuant to [Federal Rule of Civil Procedure] 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (quoting *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (per curiam)); *see also* 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1367 (Westlaw current through 2009). When the Court considers a motion for judgment on the pleadings, "the central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001) (citing *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 440 n.8 (5th Cir. 2000)). A motion for judgment on the pleadings

under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6). *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (citing *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004)). Rule 12(b)(6) decisions appropriately guide the Court's application of Rule 12(c). *See Great Plains Trust*, 313 F.3d at 313 n.8; *see also Hole v. Tex. A&M Univ.*, 2010 WL 148656, at *2 (5th Cir. 2010) (per curiam) (applying the Supreme Court's Rule 12(b)(6) decisions in reviewing a district court's grant of a Rule 12(c) motion)).

When faced with a Rule 12(b)(6) motion to dismiss (or a motion for judgment on the pleadings), the Court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). According to the Supreme Court, a viable complaint must include "enough facts to state a claim to relief that is plausible on its face," i.e., "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). A plaintiff is required to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (internal citations omitted). To avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations. *Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003); *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989).

As the Supreme Court recently observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]" – "that the pleader is entitled to relief." FED. RULE CIV. PROC. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 129 S. Ct. at 1949-50.

In ruling on a Rule 12(b)(6) motion, the court limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

### III. QUALIFIED IMMUNITY STANDARD

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Because qualified immunity is 'an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial.'" *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). To this end, the Fifth Circuit requires the plaintiff to meet a heightened pleading standard in order to avoid dismissal in cases where a government official invokes qualified immunity. *See Schultea v. Wood*, 47 F.3d 1427, 1432–33 (5th Cir. 1995) (en banc). Accordingly, once a government official raises qualified immunity as a defense, the plaintiff bears the burden of pleading specific facts demonstrating that the defendant cannot sustain the defense. *Id.* at 1433.[1]

In assessing a defendant's assertion of qualified immunity, reviewing courts typically engage in the two-pronged analysis established in *Saucier v. Katz*, 533 U.S. 194 (2001), *overruled in part by Pearson*, 129 S. Ct. at 818. Under the first prong, a court determines

---

[1] Qualified immunity cannot protect Defendants from official-capacity suits for injunctive relief. The doctrine of qualified immunity protects public officials only from suits for civil damages. *Pearson*, 129 S. Ct. at 815. Public officials may not be sued for civil damages in their official capacities, because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," and "[a]s such, it is no different from a suit against the State itself." *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 70–71 (1989) (internal citations omitted). But "official-capacity actions for prospective relief are not treated as actions against the State." *Id.* at 71 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)).

To the extent that Plaintiffs seek prospective relief against Defendants in their official capacities, the defense of qualified immunity is unavailable. *See Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1051 (5th Cir. 1997) ("It is well established law in [the Fifth] Circuit that the defenses of qualified and absolute immunity do not extend to suits for injunctive relief under 42 U.S.C. § 1983." (citing *Chrissy F. By Medley v. Miss. Dep't of Public Welfare,* 925 F.2d 844 (5th Cir.1991)).

whether the facts alleged, viewed in the light most favorable to the plaintiff, are sufficient to show that the defendant violated the plaintiff's constitutional rights. *Id.* at 201–02. If a court finds a violation of a constitutional right, it proceeds to the second step of the *Saucier* analysis. Under this prong, a court considers whether the constitutional right was clearly established, such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.[2]

### III. QUALIFIED IMMUNITY ANALYSIS

The Court now considers whether qualified immunity bars each of Plaintiffs' individual-capacity claims: First Amendment retaliation, due process, and equal protection.[3]

#### *A. First Amendment Retaliation*

The Court finds that qualified immunity does not bar Porter, Ramirez, and Jones's First Amendment retaliation claims but that it does bar Plaintiff Evans's First Amendment retaliation claim. Accordingly, the Court grants Defendants' motion for judgment on First

---

[2]The Supreme Court recently held that although the two-pronged analysis established in *Saucier* is often appropriate, it is not mandatory for the consideration of qualified immunity claims. *Pearson*, 129 S. Ct. at 818. Lower courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Id*. at 818. In this case, the Court finds it appropriate to follow the traditional *Saucier* procedure.

[3]The bulk of Defendants' argument for dismissal centers on qualified immunity. *See* Mot. for J. on the Pleadings [14] at 6–19. They also argue that Plaintiffs generally fail to state a claim upon which relief may be granted, *id.* at 21–23, which extends to Plaintiffs' official-capacity claims for injunctive relief as well. The Court finds that, to the extent Plaintiffs have pleaded sufficient facts to overcome qualified immunity, they have also stated a claim upon which relief may be granted. Accordingly, the Court does not separately discuss Plaintiffs' official-capacity claims.

Amendment retaliation with respect to Evans and denies it with respect to Porter, Ramirez, and Jones.

*1. Saucier Prong 1: Sufficiency of Facts to Show Constitutional Violation.* — To establish a First Amendment retaliation claim, a plaintiff must show: (1) that he suffered an adverse employment action; (2) that he engaged in speech involving a matter of public concern; (3) that his interest in commenting on the matter of public concern outweighed his employer's interest in promoting workplace efficiency; and (4) that the adverse action was motivated by the protected speech. *Teague v. City of Flower Mound*, 179 F.3d 377, 380 (5th Cir. 1999) (citing *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 220 (5th Cir.1999)). Here, Defendants address only prong one; they argue that Plaintiffs have not established that they suffered an adverse employment action.

A transfer may be an adverse employment actions if it is "sufficiently punitive or if the new job is markedly less prestigious and less interesting than the old one." *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000) (citations omitted). For instance, in *Forsyth v. City of Dallas*, the Court found adverse action when officers were transferred from the Intelligence Unit to night patrol. 91 F.3d 769, 774 (5th Cir. 1996). There, "evidence revealed that the Intelligence Unit positions were more prestigious, had better working hours, and were more interesting than night patrol. Moreover, few officers voluntarily transferred from the Intelligence Unit to night patrol and other officers had been so transferred as punishment." *Id.* Similarly, in *Click v. Copeland*, the Circuit held that a district court erred in according qualified immunity to a defendant who had transferred two officers from law

enforcement positions to posts as jail guards. 970 F.2d 106, 108 (5th Cir. 1992). Important to the court's decision was evidence presented at trial that "jobs in the jail are not as interesting or prestigious as jobs in the law enforcement section." *Id.* at 110. Given this downgrade in prestige and level of interest, the *Click* court held that plaintiffs' "transfers to the jail could be considered demotions, even though they suffered no reduction in salary." *Id.*

In addition to prestige, desirability, and interest, courts also consider a change in an employee's working hours when determining whether a transfer constitutes an adverse action. In *Forsyth*, the Fifth Circuit considered the "better working hours" of an employee's old post, but it was only one of several factors. 91 F.3d at 774. However, although working hours is an important factor, "[m]erely changing an employee's hours, *without more*, does not constitute an adverse employment action." *Benningfield v. City of Houston*, 157 F.3d 369, 377 (5th Cir. 1998) (citing *Forsyth*, 91 F.3d at 774; *Click*, 970 F.2d at 110) (emphasis added); *accord Ellis v. Crawford* (*Ellis II*), 2007 WL 1624773, at *7 (N.D. Tex. 2007).

Plaintiffs Porter, Ramirez, and Jones plead facts sufficient to establish an adverse action. They allege, like the officers in *Click* and *Forsyth*, that they were transferred from their previous posts to less desirable and less prestigious new posts. For example, Porter presents facts that he previously held the post of gun-range master, which had been a promotion for him after sixteen years as a firearms instructor for the Department. The range master, according to Porter, conducts in-service trainings and "firearms schools." Compl. [1] at 4. Ramirez, who is the only motorcycle-certified deputy in the department, pleads that

before his transfer he was formerly the only motorcycle officer assigned to the town of Sunnyvale. Jones alleges that he was the Lieutenant of the Department's patrol section before his transfer. Further, like the officers in *Forsyth*, Porter, Ramirez, and Jones's transfers involved a change from day shifts to less desirable evening or midnight shifts. Finally, they allege, like the officers in *Forsyth*, that the posts to which they were transferred were typically reserved for more junior deputies.

By contrast, Evans fails to establish an adverse employment action. Evans alleges that he was transferred from his post as a day-shift K-9 handler to a newly created night shift. However, unlike Porter, Ramirez, and Jones (and unlike the officers in *Click* and *Forsyth*), Evans's transfer involved only a change in working hours. He fails to allege facts that his job description changed or that his new post was less prestigious or less interesting. Accordingly, Evans falls squarely within the Fifth Circuit's missive in *Benningfield* that a change in working hours, without more, is not an adverse employment action.[4]

**2. *Saucier* Prong 2: Objective Reasonableness of Defendants' Conduct.** — "Even if [a] government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable." *Wallace v. County of Comal*, 400 F.3d 284, 289 (5th Cir. 2005). The relevant inquiry is whether, in light of preexisting law, the unlawfulness of Defendants' conduct would be

---

[4]Because Evans fails to allege a First Amendment retaliation claim on *Saucier* prong one, qualified immunity bars his individual-capacity claim. The Court further finds that Evans generally fails to state a First Amendment retaliation claim and thus that his official-capacity claim must also fail.

apparent. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Where the violation of a constitutional right is concerned, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640.

Here, the only issue Defendants present is whether Plaintiffs' transfers were "adverse actions." Accordingly, the relevant inquiry is whether "clearly established law" would put a reasonable official on notice that Plaintiffs' transfers were adverse actions. *See, e.g., DePree v. Saunders*, 588 F.3d 282, 287 (5th Cir. 2009) ("Here, no clearly established law informed Saunders that the particular discipline she imposed, which fell far short of demotion or removal, constituted an adverse employment action.").

Fifth Circuit case law at the time of Plaintiffs' transfers clearly established that Defendants' conduct was unlawful. First, it was clear that lateral transfers can be adverse employment actions. *See Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000); *Benningfield v. City of Houston*, 157 F.3d 369, 377 (5th Cir. 1998); *Pierce v. Tex. Dep't of Criminal Justice*, 37 F.3d 1146, 1149 (5th Cir. 1994). Further, *Click* and *Forsyth* ― Fifth Circuit cases with facts remarkably similar to this case ― define the contours of "adverse action" in a law enforcement context. These cases outline various factors, most notably a decline in prestige and desirability, that may make a transfer an "adverse action."

Defendants attempt to distinguish *Click* and *Forsyth*. They distinguish *Click* by saying that the plaintiffs there lost seniority rights, unlike Plaintiffs in this case. They distinguish *Forsyth* by saying that the plaintiffs there were not transferred to the jail but to the "night uniformed patrol." However, Defendants fail to explain why these distinctions

ORDER – PAGE 11

make a legal difference in light of the many factual similarities between *Click*, *Forsyth*, and this case. The Court finds that no reasonable official would understand *Click* and *Forsyth* to mean that only transfers involving *identical* facts can be adverse actions.

Defendants argue that Valdez's and Flores's conduct was reasonable in light of the Dallas County Civil Service Rules, which define "lateral transfers" differently from "demotions." *See* Def.'s Mot. for J. on the Pleadings [14] at 13. Under Defendants' interpretation of the rules ― which the Court assumes without deciding is correct ― Plaintiffs' transfers cannot be adverse actions because they are not demotions. They rely on *Wilson v. Layne*, 526 U.S. 603 (1999), to support their position. In that case, the Supreme Court held that it was not unreasonable for officers to rely on department policy to guide their actions because the state of the law was "at best undeveloped." *Wilson*, 526 U.S. at 616–18. However, the *Wilson* Court added that reliance on official policy, "of course, could not make reasonable a belief that was contrary to a decided body of case law." *Id.* at 617. To the extent that the civil service rules say that lateral transfers are never adverse actions, they conflict with decided Fifth Circuit case law. Accordingly, Defendants' reliance on this interpretation of the rules and on *Wilson* was not reasonable.

### B. Due Process

The Court finds that qualified immunity does not bar Plaintiffs' due process claims. Accordingly, the Court denies the motion for judgment on the pleadings with respect to due process.

*1. Saucier Prong 1: Sufficiency of Facts to Show Constitutional Violation.* — "To succeed on a due process claim in the context of public employment, a plaintiff must show that (1) he had a property interest/right in his employment and (2) his termination was arbitrary or capricious." *Bolton v. City of Dallas*, 472 F.3d 261, 263 (5th Cir. 2006) (citing *Moulton v. City of Beaumont*, 991 F.2d 227, 230 (5th Cir. 1993)).

First, Plaintiffs successfully allege that they had a protected property interest in their positions. Not every public employee has a property interest in his position; such an interest must be found in an independent source like state law. *Perry v. Sindermann*, 408 U.S. 593, 601 (1972); *Bolton*, 472 F.3d at 264. A public entity may create a property interest when it creates conditions that imply "the existence of a property interest by abrogating the right to terminate an employee without cause." *Bolton*, 472 F.3d at 264 (quoting *Muncy v. City of Dallas*, 335 F.3d 394, 398 (5th Cir. 2003)).

Plaintiffs argue that they had a protected property interest in their positions by operation of the Dallas County Sheriff's Department Civil Service Rules. The Court agrees. In Texas, "a deputy serves at the pleasure of the sheriff," TEX. LOCAL GOV'T CODE § 85.003(c), but if the deputy is "included in the coverage of a civil service system created under Chapter 158," he "may be suspended or removed only for a violation of a civil service rule adopted under that system." *Id.* § 85.003(f). The Dallas County Sheriffs Department has adopted a civil service code pursuant to Chapter 158 of the Texas Local Government Code. *See* DALLAS COUNTY, TEXAS, CODE app. A (referencing TEX. LOCAL GOV'T CODE

§ 158.031 *et seq.*). The Department's civil service code, promulgated under the Texas Local Government Code, creates a property interest in the positions themselves.

Of course, Plaintiffs here were not *terminated*; they allege that they were demoted. Plaintiffs allege they had a property interest in not being transferred to a less desirable post for arbitrary and capricious reasons. They say this interest comes from a provision of the civil service rules providing that "matters affecting employees including . . . transfers [and] demotion . . . will be administered without regard to . . . political affiliation." *Id.* § 2.28. Defendants fail to provide any substantive response to this point beyond the conclusory assertion that this language is "inapplicable." Reply Br. in Support of Mot. for J. on the Pleadings [17] at 7. They do not explain why the language is inapplicable or why it does not create a property right in not being transferred for political activity. Accordingly, the Court finds that Plaintiffs, relying on this provision, have successfully alleged a property interest in not being transferred for political reasons.

Second, Plaintiffs sufficiently allege that Defendants' actions in removing them from their posts were arbitrary and capricious. When a plaintiff has a property interest in his position, "the only substantive process due [is] the exercise of professional judgment in a non-arbitrary and non-capricious fashion." *Harrington v. Harris*, 118 F.3d 359, 368 (5th Cir. 1997). The relevant inquiry is whether the state action is "so arbitrary and capricious as to be irrational." *See Neuwirth v. La. State Bd. of Dentistry*, 845 F.2d 553, 558–59 (5th Cir. 1988) (citing *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214 (1985); *Exxon Corp. v. Governor of Md.*, 437 U.S. 117 (1978)).

Neither party elaborates on the meaning of "arbitrary and capricious" in this context. However, the Fifth Circuit's decision in *Harrington v. Harris* is instructive. There, the Court reviewed a jury verdict in favor of several plaintiff professors' due process claims. *See generally Harrington v. Harris*, 118 F.3d 359 (5th Cir. 1997). The professor-plaintiffs in that case were not terminated, but they failed to receive salary increases to which they claimed an entitlement. *Id.* at 362–64. The professors presented facts at trial indicating that their employer failed to give them their full merit raises in retaliation for protected speech. *Id.* at 362. The jury found for the plaintiffs. On appeal, the Fifth Circuit held that "a jury could reasonably conclude" that the employer's actions were arbitrary and capricious, rather than an exercise of professional judgment. *Id.* at 368.

Plaintiffs have pled facts sufficient to establish that Defendants transferred them in an arbitrary and capricious fashion. Like the plaintiffs in *Harrington*, Plaintiffs here allege that they were subject to adverse employment action in retaliation for protected speech. In particular, Plaintiffs point to the temporal proximity of their "unprecedented" transfers and their protected campaign activity. Defendants respond that they transferred Plaintiffs for legitimate reasons: "to maximize training and experience for all of its employees."[5] Mot. for J. on the Pleadings [14] at 17. However, on a Rule 12(c) motion, the Court must consider the facts as pled in the light most favorable to the Plaintiffs, while keeping in mind the heightened pleading standard when a defendant invokes qualified immunity. The Court finds

---

[5]Other than invoking this verbal formulation, Defendants fail to explain *how* the transfers maximized training and experience for all employees.

that Plaintiffs have adequately pled that their transfers were motivated by retribution for protected speech. This is similar to the employer's motivation in *Harrington*, which the Court found rose to the level of arbitrary and capricious such to establish a due process violation.

   **2. Saucier** *Prong 2: Objective Reasonableness of Defendants' Conduct*. ― Again, the relevant question here is whether, in light of preexisting law, the unlawfulness of Defendants' conduct would be apparent. *Anderson*, 483 U.S. at 640. Whether Plaintiffs had a property interest in not being transferred for election activity is governed by clearly established law. Defendants do not assert that the Texas statute limiting at-will termination for deputy sheriffs is unclear. Nor do they argue that the Department's own civil service rules are unclear in mandating that employees not be transferred or demoted on the basis of political affiliation. The law is also clear that adverse employment actions in retaliation for protected speech rise to the level of arbitrary and capricious. Defendants do not argue that their conduct ― as alleged by Plaintiffs ― was reasonable. Instead, they only argue that Plaintiffs incorrectly allege the facts. However, judgment on the pleadings under Rule 12(c) is appropriate only where the facts are undisputed.

### *C. Equal Protection*

   The Court finds that qualified immunity does not bar Plaintiffs' equal protection claims. Defendants argue that Plaintiffs fail to state a claim and hence that their equal protection claims must fail at the first step of the qualified immunity analysis. Because the

Court disagrees, it denies the motion for judgment on the pleadings with respect to equal protection.

Plaintiffs plead sufficient facts to establish an equal protection claim against Defendants in their individual capacities. A plaintiff may allege an equal protection claim as a "class of one" when he does not allege membership in a protected class or group. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Mata v. City of Kingsville*, 275 F. App'x 412, 415 (5th Cir. 2008) (per curiam). This theory applies equally to a "class of four," as in this case. *See Olech*, 528 U.S. at 564 n.5 ("We note that the complaint in this case could be read to allege a class of five."). In a successful "class of one" claim, a plaintiff alleges that alleges that "she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* (citing *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441 (1923); *Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty.*, 488 U.S. 336 (1989)).[6]

---

[6]Defendants argue that the Court must dismiss Plaintiffs' equal protection claim because they did not assert their "class of one" theory in their pleadings. They cite two cases to support their position. *See Little v. Liquid Air Corp.*, 952 F.2d 841, 846 (5th Cir. 1992) (holding that plaintiffs could not amend their complaint to include new factual allegations after defendants had filed their motion for summary judgment); *Shahin v. Darling*, 606 F. Supp. 2d 525, 535 (D. Del. 2009) (declining to consider new theories of liability — i.e., entirely new claims under different statutory authority — that plaintiff alleged for the first time in response to defendant's motion to dismiss). These cases are inapposite because Plaintiffs in this case do not advance new factual allegations or causes of action in their response. Instead, they merely elaborate on their equal protection claim by citing the appropriate legal standard for their factual allegations.

Plaintiffs bring their equal protection claim under a theory of "selective enforcement" of the law. *See Mikeska v. City of Galveston*, 451 F.3d 376, 381 n.4 (5th Cir. 2006) (recognizing "selective enforcement" as one kind of "class of one" equal protection claim). A selective enforcement plaintiff must demonstrate that "the government official's acts were motivated by improper considerations, such as race, religion, or the desire to prevent the exercise of a constitutional right." *Bryan v. City of Madison*, 213 F.3d 267, 277 (5th Cir. 2000); *accord Mata*, 275 F. App'x at 415–16. Retaliation "for an attempt to exercise one's . . . right to free speech would be expected to qualify" as an improper motive. *Bryan*, 213 F.3d at 277 n.18 (citing *Esmail v. Macrane*, 53 F.3d 176, 178–79 (7th Cir. 1995)).

Plaintiffs sufficiently allege both elements of their "class of one" equal protection claim. First, they present facts indicating that they were treated differently than other officers similarly situated. Specifically, they allege that they were transferred to posts not normally held by deputies with their level of experience and training. Evans, who experienced only a shift change, alleges that the newly created midnight shift should have gone to the less-senior K-9 officer. *See* Compl. [1] at 5. Defendants respond that the transfers were routine and were intended to maximize training opportunities for all employees. Plaintiffs argue that Defendants' stated reason is merely pretext for what were actually retaliatory motives. Here, as with the due process claim, the legally relevant facts are disputed. On a Rule 12(c) motion, the Court must consider the facts as alleged in the pleadings in a light most favorable to the plaintiffs. Accordingly, the Court finds that Plaintiffs have sufficiently alleged that they were treated differently than similarly situated employees.

Second, Plaintiffs adequately allege that Defendants acts were motivated by improper considerations. They offer a purported motive for Defendants' actions ― retribution for protected speech. They present facts indicating that Defendants' stated reason for transferring them was pretext for their improper motives. Defendants argue that Plaintiffs claim must fail because they did not affirmatively "'rule out all possible justifications for disparate treatment, not merely the justification provided by the government official.'" Reply Br. in Support of Mot. for J. on the Pleadings [17] at 9 (citing *Unruh v. Moore*, 326 F. App'x 770, 772 (5th Cir. 2009) (per curiam)). It is true that, "to ultimately prevail" on a "class of one" claim, a plaintiff "must carry the heavy burden of 'negativ[ing] any reasonably conceivable state of facts that could provide a rational basis' for their differential treatment." *Lindquist v. City of Pasadena*, 525 F.3d 383, 387 (5th Cir. 2008) (quoting *Whiting v. Univ. of S. Miss.*, 451 F.3d 339, 349 (5th Cir. 2006)). But Defendants here conflate Plaintiffs' *ultimate* burden with their burden on this motion to dismiss. Defendants cite no authority, and the Court knows of none, indicating that an equal protection plaintiff must negative any conceivable rational basis for an official's action in his complaint.

## Conclusion

For the reasons stated above, the Court grants in part and denies in part Defendants' motion for judgment on the pleadings. The Court grants the motion for judgment in favor of Defendants with respect to Plaintiff Evans's First Amendment retaliation claim because it is barred by qualified immunity and because he fails to state a claim upon which relief may be granted. The Court denies the balance of the motion.

Signed March 25, 2010.

_____
David C. Godbey
United States District Judge

ORDER – PAGE 20